UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**GEORGE L. RUSSELL, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

August 19, 2014

MEMORANDUM TO COUNSEL RE:      TECH USA, Inc. v. Amber S. Hoppel, et al.
                                Civil Action No. GLR-12-2717

Dear Counsel:

  Pending before the Court is Plaintiff TECH USA, Inc.'s ("TECH USA") Motion to Stay Proceedings Pending Arbitration. (ECF No. 44). The Motion is now ripe for disposition. No hearing is necessary pursuant to Local Rule 105.6 (D.Md. 2014). For the reasons outlined in specific detail below, the Motion will be denied.

  At issue in this case is the arbitrability of a dispute between TECH USA and Defendant Randstad Technologies LP ("Randstad"). The dispute underlying the arbitration involves TECH USA's claims that Randstad misappropriated its trade secrets, tortiously interfered in its business and contractual relationship with Defendant Amber S. Hoppel, engaged in unfair competition, and engaged in a civil conspiracy with Hoppel to commit such tortious acts. TECH USA is a mid-size competitor in the nationwide and worldwide market for providing customized staffing consulting, and subcontracting support to commercial and government clients. Pursuant to the terms of a Confidentiality/Non-Competition Agreement (the "Agreement") between TECH USA and Hoppel, Hoppel became an employee of TECH USA on February 15, 2009, serving briefly as a Recruiter and then, after a promotion, as Account Executive for more than three years. Hoppel resigned from TECH USA's employment on August 14, 2012.

  TECH USA alleges, at some point prior to her resignation, Hoppel met with representatives from Randstad and, in the course of that meeting (or those meetings), disclosed the identity of certain TECH USA customers, as well as other information regarding those customers. TECH USA asserts the information disclosed by Hoppel constitutes its Trade Secrets and/or Confidential Information. TECH USA further alleges Randstad advised Hoppel concerning its opinion of the unenforceability of the Agreement, which Hoppel shared with other existing TECH USA employees. On August 20, 2012, Hoppel started work with Randstad at its Wilmington, Delaware office, which is within the fifty-mile prohibited zone of the limited Non-Competition covenant in the Agreement. This suit promptly followed.

  The Agreement between Hoppel and TECH USA provided that all disputes arising out of the contract would be submitted to binding arbitration. Randstad was not a party or signatory to the Agreement. On January 21, 2014, TECH USA filed its Motion to Stay Proceedings Pending Arbitration and to compel Randstad to participate under an "intertwined claims" and "direct

benefits" theory of equitable estoppel. (ECF No. 44). Randstad opposed the Motion, asserting that it cannot be compelled to arbitrate because it is neither a signatory to, nor attempting to benefit from, the underlying contract containing the arbitration clause. (ECF No. 45).

"Generally, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Under certain circumstances, however, a nonsignatory can be bound to an arbitration agreement executed by other parties. Id. Of particular relevance here, is the basic contract principle of equitable estoppel. Id. at 417. In the arbitration context, the estoppel theory may prevent a party asserting rights under a contract "from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause." Id. at 418. The United States Court of Appeals for the Fourth Circuit has recognized both an "intertwined claims" and "direct benefits" theory of equitable estoppel. See id. at 417-18.

With respect to TECH USA's "direct benefits" theory of estoppel, the Fourth Circuit has found the equitable estoppel doctrine an appropriate basis to compel arbitration against a non-signatory when the non-signatory "consistently maintained that other provisions of the same contract should be enforced to benefit him." Id. at 418. Where a non-signatory benefits from the contractual relationship between the parties to an agreement but not the agreement itself, however, the non-signatory has not directly benefitted. See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 162 (4th Cir. 2004) (finding the benefit to the non-signatory was indirect because it flowed from the contractual relation of parties not from specific provisions of the contract itself); see also MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 61 (2d Cir. 2001) ("[T]he benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 778-79 (2d Cir. 1995))). In Int'l Paper, for example, the nonsignatory derived the benefit of the contract by filing suit and seeking damages for a signatory's alleged breach of that very contract. 206 F.3d at 418.

Here, Randstad has not filed any claims against TECH USA arising out of the Agreement or otherwise. Although TECH USA argues Randstad received a direct benefit from the Agreement in the form of TECH USA's trade secrets, this would not constitute a direct benefit because it does not flow from a provision of the Agreement itself, rather as a result of the contractual relationship between TECH USA and Hoppel. Because TECH USA has not shown that Randstad received a direct benefit from the Agreement, Randstad will not be estopped from objecting to arbitration under this theory.

With respect to TECH USA's "intertwined claims" theory of estoppel, the Fourth Circuit has found the equitable estoppel doctrine an appropriate basis to compel arbitration "when the signatory to the contract containing the arbitration clause raises allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 373 (4th Cir. 2012) (alteration in

the original) (quoting Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 396 (4th Cir. 2005)) (internal quotation marks omitted).  Indeed, TECH USA employs the same allegations as the bases for liability against Hoppel, a signatory to the Agreement, and Randstad, a non-signatory to the Agreement.  In Aggarao, however, the Fourth Circuit estopped a signatory plaintiff from relying on the defendants' status as non-signatories to prevent the defendants from compelling arbitration under the agreement.  675 F.3d at 373.  Here, a signatory plaintiff seeks to compel a non-signatory defendant to participate in arbitration.  This distinction is not without significance.

The Unites States Court of Appeals for the Second, Third, and Fifth Circuits have explicitly held that the intertwined claims theory of estoppel cannot be used by a signatory plaintiff to compel a non-signatory defendant to participate in arbitration.  See MAG Portfolio Consultant, 268 F.3d at 62 ("[B]ecause arbitration is guided by contract principles, . . .  a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." (citing Thomson-CSF, 64 F.3d at 779)); E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 202 (3d Cir. 2001) (same); Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 361 (5th Cir. 2003) (same).  Thus, the Court is persuaded that the intertwined nature of TECH USA's claims against Hoppel and Randstad are insufficient, standing alone, to justify compelling Randstad to arbitrate as a non-signatory to the Agreement.  See Bridas, 345 F.3d at 361 ("[T]his expanded version of equitable estoppel would 'threaten to overwhelm the fundamental premise that a party cannot be compelled to arbitrate a matter without its agreement.'" (quoting J. Douglas Uloth & J. Hamilton Rial, III, Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate—A Bridge Too Far?, 21 Rev. Litig. 593, 632 (2002))).

For the foregoing reasons, TECH USA's Motion to Stay Proceedings Pending Arbitration (ECF No. 44) is DENIED.  A scheduling order will follow.  Despite the informal nature of this memorandum, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly and lift the STAY in this case.

        Very truly yours,

        /s/
        _____
        George L. Russell, III
        United States District Judge